a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **DEMARIO LITTLE #478418,** Plaintiff | **CIVIL DOCKET NO. 5:19-CV-00787 -P** |
| **VERSUS** | **CHIEF JUDGE S. MAURICE HICKS, JR.** |
| **DARREL VANNOY,** Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) filed by *pro se* Petitioner Demario Little ("Little"). Little is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Little challenges his conviction and sentence imposed in the First Judicial District Court, Caddo Parish.

Because Little fails to meet his burden under § 2254, his Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

## I. Background

Little was convicted of second degree murder and sentenced to life imprisonment. *State v. Little*, 49,978 (La.App. 2 Cir. 8/12/15, 1); 174 So.3d 1219, 1220. According to the appellate court:

> On July 30, 2011, Roshenna Crowder was shot and killed as she hid in the closet of her bedroom in the house she shared with her boyfriend, Donald Brown (a/k/a "Scrap"). Brown was also shot several times, in the leg, groin and eye, but survived. Roshenna's two children (4 and 8 years

1

old) were in the home when the shooting occurred and ran to their grandmother's home and reported that their mother was dead. They were able to say that some men knocked on the door, came in with a gun and shot their mother. Police were dispatched to the scene.

It was not until late 2011 that police received information implicating Demario Little as the shooter.[1]  It was then that one of Little's girlfriend's sons gave police information that ultimately connected his brothers, Kenneth and Tracy Moore, to the crime. The Moore brothers admitted their participation in the events leading up to the shooting and separately provided very detailed information about the crime. Their identification of Little as the shooter led to his arrest in December of 2011. A grand jury indictment was handed down on January 19, 2012, charging Little with the second degree murder of Crowder. Little was convicted as charged by a jury on April 25, 2014.

_____

[1]In the five months following the incident, police had received information from an informant implicating three other individuals in the murder. A month after the shooting, Brown regained consciousness, but was still unable to speak. He was shown three photographic arrays and identified two of the men as the perpetrators. The men were initially charged with Crowder's murder.

*State v. Little*, 49,978, p. 2 (La.App. 2 Cir. 8/12/15); 174 So.3d 1219, 1221.

On direct appeal, Little alleged there was insufficient evidence to convict him and that the trial court erred in denying his motion to suppress his inculpatory statement. *Id.*  The conviction and sentence were affirmed. *Id.*  Little timely filed a writ application in the Louisiana Supreme Court, which was denied on September 23, 2016. ECF No. 7-1 at 2-3. Little did not seek further review in the United States Supreme Court.

Little filed an application for post-conviction relief on October 2, 2017, claiming that his indictment was invalid; he is actually innocent; and he received ineffective assistance of counsel for failing to investigate the invalid indictment and failing to investigate or prepare a defense for trial. ECF No. 1-3 at 64-78. The post-conviction application was denied. ECF No. 1-3 at 94-96. The Louisiana Second Circuit Court

of Appeal denied writs on the showing made.  ECF No. 1-3 at 122.  The Louisiana

Supreme Court denied writs, finding that Little failed to meet the legal standard to

establish ineffective assistance, and failed to satisfy his burden of proof as to the other

claims.  *Little v. Vannoy*, 2018-0853 (La. 4/22/19); 267 So.3d 1105.

In his § 2254 Petition, Little raises the same claims presented in the state

courts.  The Petition is timely, and the claims are exhausted.

## II.    Law and Analysis

### A.    Rule 8(a) Resolution

The Court is able to resolve Little's § 2254 Petition without the necessity of an

evidentiary hearing because there are no genuine issues of material fact relevant to

his claims, and because the state court records provide an adequate factual basis.  *See*

*Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756,

761 (5th Cir. 1980); Rules Governing Section 2254 Cases.

### B.    Standard of Review

The standard of review in federal habeas cases is governed by the

Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which

provides, in part:

> (d) An application for writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a state court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

C.     Little's sufficiency of the evidence claim is meritless.

Little alleges there was insufficient evidence to convict him of second degree murder under *Jackson v. Virginia*, 443 U.S. 307 (1979).

Little's claim was presented in his direct appeal to the Second Circuit and the Louisiana Supreme Court. ECF No. 20-7 at 228-237; 258-264; ECF No. 20-8 at 11-20. The Louisiana Supreme Court denied writs, without reasons. Thus, the federal habeas court must "look through" to the "last related state court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018). The appellate court found that the evidence, viewed in the light most favorable to the state, was sufficient to support Little's conviction for second degree murder. *State v. Little*, 174 So.3d at 1228.

Because this claim was adjudicated on the merits by the state courts, Little's habeas claim is subject to deferential review under §2254(d). *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). And review of a sufficiency of the evidence claim that has been adjudicated on the merits in state court must be "doubly deferential," meaning that the state court determination may not be overturned unless it was an objectively unreasonable application of the already deferential *Jackson* standard. *See Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Harrell v. Cain*, 595 F. App'x 439 (5th Cir. 2015).

The clearly established federal law applicable to a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The review remains the same whether the evidence is direct or circumstantial. *United States v. Richardson*, 848 F.2d 509, 511 (5th Cir. 1998). The federal habeas court must look to the substantive elements of the offense under state law when conducting a *Jackson* review. *Norris v. Dretke*, 826 F.3d 821, 833 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 1203 (2017). Louisiana defines second degree murder as:

the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery,

5

cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm.

La. R.S. 14:30.1.

### 1.   Law Enforcement Officers

The testimony presented by the State established that Crowder's two young children were in the house at the time of her murder.  They ran to their grandmother's home and told their great-uncle, Donald Crowder, that their mother was dead.  ECF No. 20-5 at 47-50.  Mr. Crowder and the children's grandmother, Emily Crowder, went back to the house and found the victims, Roshenna Crowder and Donald Brown.  ECF No. 20-5 at 50-51.  Crowder was found deceased in the bedroom closet, and Brown was located on the floor, bleeding from apparent gunshot wounds.  ECF No. 20-5 at 61-63.  Emily Crowder testified that drawers had been pulled out and a purse emptied on the bed.  ECF No. 20-5 at 61-62.

Officer Marvin Clark of the Shreveport Police Department ("SPD") testified that he was dispatched to the scene at 9:24 p.m.  ECF No. 20-5 at 68.  He found Brown still alive and Crowder dead in the closet where it appeared that she had been trying to hide.  ECF No. 20-5 at 74-75.  He noticed marijuana and shell casings in the bedroom.  ECF No. 20-5 at 80-82.

Corporal John Madjerick testified that he saw several shell casings on the floor of the crime scene, as well as bullet paths through Crowder and into the wall.  ECF No. 20-5 at 96.  The casings were the type fired from a semi-automatic handgun.  *Id.* Cpl. Madjerick documented a sandwich bag of marijuana, a cereal box containing what appeared to be marijuana, and loose marijuana on the floor.  ECF No. 20-6 at

6

11-16.  Drawers were open in the bedroom, and a trash can contained loose tobacco and cigar wrappers, like those used to wrap marijuana.  ECF No. 20-6 at 16-17.

### 2.  <u>Tracy Moore</u>

Tracy Moore testified that, on the night of the murder, he was initially at his mother's home with his mother, Little, and his younger brother Kenneth Moore.  ECF No. 20-6 at 32-33.  Tracy testified that Little and Kenneth asked him to buy marijuana.  *Id.* at 35.  Tracy had purchased marijuana from the victim Donald Brown before, and knew him as "Scrap."  *Id.* at 36.  Neither Little nor the Moores had a car, so they walked to the victim's house.  *Id.*  Tracy knocked on the door and Crowder let them in.  *Id.*  Tracy saw a little boy, who Crowder told to go in the back of the house.  *Id.* at 39.

Tracy testified that Kenneth gave him five dollars, which Tracy gave to Crowder "to buy a blunt," or a five-dollar bag of marijuana.  *Id.* at 37-38.  Crowder said that she didn't sell blunts anymore and handed the money back to Tracy.  *Id.* at 38.  Little pulled out a gun and said that he wanted "everything then."  *Id.*  Crowder yelled for Brown and ran around a corner to the bedroom.  *Id.* at 38-41.  Little followed and fired a shot.  *Id.* at 41.

Tracy saw Brown in the bedroom "leaning beside the bed, like he had been shot."  *Id.* at 41.  Brown "hit the ground" and asked Little not to take his life.  *Id.*  Tracy testified that Little asked where the marijuana was and said that he hates "when people begging for their life."  *Id.* at 41.  Brown indicated that the marijuana

was in the drawer. *Id.* at 42. While Little looked through the drawers, Brown tried to grab Tracy's leg. *Id.* at 43.

Tracy testified that Little shot Brown three times – in the shoulder, "down toward the penis," and "towards his eye." ECF No. 20-6 at 43. Little then went to the closet, "looked both ways," and "then he just shot." *Id.* at 43.

Tracy testified that Little took three of four bags of marijuana so it would look like a drug deal gone bad. *Id.* at 44. He also testified that Little left the house with some money, and gave Tracy and Kenneth each $100 dollars. *Id.* at 44. The three men returned to Tracy's mother's house. *Id.* at 46. Little said: "They dead. They dead. I kilt 'em. I kilt 'em." *Id.* at 55. Little called his cousin, "Pooh," to pick them up and bring them to a hotel. *Id.* at 46. A few hours later, Tracy. Little told Tracy that if he went down, Tracy and Kenneth were going down, too. *Id.*

### 3.   <u>Kenneth Moore</u>

Kenneth Moore testified that he was at his mom's house when his brother Tracy arrived. ECF No. 20-6 at 79-80. His mom was crying on the couch and Little was pacing back and forth. *Id.* at 80. Kenneth testified that Little asked both him and Tracy if they wanted "to go hit a lick," meaning to rob someone. After they declined, Little suggested they go get marijuana. *Id.* at 81-82. They began walking down the street, and Little asked Kenneth for money. Kenneth gave Little five dollars. *Id.* at 84.

Kenneth testified that it was Little who knocked on the door and asked for marijuana. *Id.* at 84. Kenneth saw a little boy and a dog, as well. *Id.* Kenneth

stated that Little handed Crowder five dollars, and Crowder replied: "We don't sell five." *Id.* at 86-87.  Kenneth turned around to reach for the door, but Little said: "I want everything." *Id.* at 88.  Kenneth testified that Crowder yelled for Brown and ran.  Then Little followed Crowder and fired a shot. *Id.* at 89.  Little called Tracy and Kenneth into the bedroom. *Id.*

Kenneth testified that he saw Brown on the floor of the bedroom begging for his life.  Little was standing over Brown asking for money and marijuana. *Id.* at 91.  Brown indicated that the money and marijuana was in a drawer. *Id.* at 93.  Little shot Brown multiple times.  Then he walked over to the closet and shot at the closet. *Id.* at 94.  Little instructed Kenneth to take something and leave.  Kenneth took some marijuana and ten dollars. *Id.* at 95-96.

After they got back to Kenneth's mother's house, Little called his cousin, "Pooh," to bring them to a hotel. *Id.* at 97.  Little then gave Kenneth and Tracy money and warned them to keep quiet. *Id.* at 98.

### 4.  Polly West

Polly West testified that her sons Tracy and Kenneth Moore were 19 and 18 years of age at the time of the murder.  ECF No. 20-6 at 121.  West was in a relationship with Little. *Id.*  That evening, Kenneth, Tracy, and Little left the house to go get marijuana. *Id.* at 122.  When they returned, Little entered the house saying, "Let's go. Let's go." *Id.*  They left with Little's cousin, "Pooh." *Id.* at 127.  Little gave Pooh money to pay for the motel room. *Id.*

West testified that Little said he "killed them." *Id.* at 123. She testified that Little demonstrated to her how he shot Brown when Brown was begging for his life. *Id.* at 124. Little also told her that he "went to the closet and just started opening fire" when he found out Crowder was hiding in there. *Id.* at 125. West testified that Little informed her that a little boy and little girl were in the house. West said that Little left some marijuana behind to make the scene look like a "drug-deal-gone-bad." *Id.* at 130.

West identified letters that Little wrote to her from jail asking her to have her sons say that Detective Demery forced them to give statements implicating Little. *Id.* at 133-43. Little enclosed affidavits for Kenneth and Tracy to execute stating that they had lied when identifying Little as the shooter. *Id.* at 139. West turned the letters over to Detective Demery. *Id.* at 131.

On cross-examination, West testified that she first learned about the shooting from Little, but she could not remember exactly when. ECF No. 20-6 at 148. She also stated that she also heard about the shooting from another son, Dantavius, who was informed of the shooting by Kenneth. *Id.* at 178. Dantavius warned West that Little really did commit the shooting. *Id.* at 181.

### 5.  <u>Detective Demery</u>

Detective Demery testified that he was the lead investigator on the Crowder murder and shooting of Donald Brown. ECF No. 20-7 at 8. Upon arriving at the scene, he saw an eight-year-old female and four-year-old male. *Id.* at 9. There was

marijuana scattered around the house, a baggy of marijuana by the kitchen, and a cereal box containing marijuana in the bedroom.  *Id.* at 9.

Demery testified that he heard a rumor that Barnell Johnson, a.k.a. "Freddie Loke," had attempted to rob Crowder and Brown and shot them in the process.  *Id.* at 10.  There was another rumor about a neighbor named "Julius" being involved.  *Id.* at 10.  A street informant told a narcotics agent that he heard Johnson and another man named Shawnee Bernard committed the crime.  *Id.* at 12.

Demery learned that Johnson and Bernard had been involved in other robberies that same evening.  ECF No. 20-7 at 13.  Eventually, Demery brought Johnson, Bernard, Ferlonzo Morna, and Dave Bernard all in for questioning.  *Id.* at 14.  Johnson gave details of the robberies he was involved in on the night of Crowder's murder.  *Id.*

Demery testified that two inmates claimed that Johnson had admitted to kicking the door in and shooting Brown while he was trying to get out of the house.  *Id.* at 20.  However, there was no sign that the front door had been kicked in.  *Id.* at 21.  Johnson claimed that Shawnee Bernard had committed the crime because he knew he had a gun and wanted to kill someone during the robberies they had committed together.  *Id.* at 17-18.  While still hospitalized, Brown pointed out Johnson and Bernard in photograph lineups[1].  *Id.* at 20.  Ultimately, Johnson and Bernard were arrested and charged with Crowder's murder.  *Id.* at 21.

---

[1] Brown later recanted.  ECF No. 20-7 at 55-56.

However, Demery continued investigating.  *Id.* at 22.  He eventually learned that an inmate named Dantavius Jamerson claimed that his brother had been with Little when Little committed the murder.  *Id.* at 23.  Jamerson had detailed information about the incident.  *Id.* at 23-24.

Thereafter, Demery contacted Kenneth and then Tracy.  The brothers' statements gave a description of the inside of the house where Crowder was killed. *Id.* at 26.  Moreover, Tracy identified the clothing Brown and Crowder had been wearing when they were shot.  *Id.* at 26-27.  Demery then met with West, who gave him "pretty much the same story," with fewer details.  *Id.* at 27.  Demery noted that the brothers knew more details than Johnson or Bernard, including details that had never been released to the public.  *Id.* at 27.

Demery arrested Little and interviewed him.  Little admitted to knowing Brown and Crowder.  *Id.* at 29.  Little said that he and the Moores bought marijuana from them on the evening of the murder, but the shooting must have happened after they left.  *Id.* at 29.  The following day, Little told Demery that he went to rob Brown and Crowder due to some financial issues he was having.  *Id.*  Little indicated that he took a gun because he did not know what would happen when he arrived or whether Brown had a gun.  *Id.*

Demery testified that Little explained that he "upped the gun" after Crowder said that she did not have any nickel bags to sell.  *Id.*  Little told Demery that he shot Brown because he though Brown was "going for a gun."  *Id.* at 30.  Little thought the bullets must have hit Crowder when he shot Brown.  *Id.*  Little told Demery that he

left with two bags of marijuana and $500-$600 dollars. *Id.* After the interview, Little asked if he could call West. He told West on the phone that his life was over because the police knew everything. *Id.*

The defense called three witnesses at trial. First, Marquis Walker was called to the stand. ECF No. 20-7 at 95. Walker's testimony was determined to be hearsay and inadmissible. *Id.* at 105. Brown was also called by the defense. Brown testified that he, not Crowder, answered the door on the evening of the murder. *Id.* at 106. Brown testified that the three people that came to his door were Little, "Freddie Loke," and Shawnee Bernard. *Id.* at 108. Brown claimed that he picked those three individuals out of a lineup shown to him by Detective Demery. *Id.* at 110. Then, Brown claimed that he did not identify Little as a participant until he saw him on the news. *Id.* at 119. Ultimately, the State stipulated that Brown did not mention Little until a pretrial meeting on April 4, 2014. *Id.* at 124.

### 6.  <u>Demario Little</u>

Little then testified on his own behalf. He admitted to going to Brown's to buy marijuana. Little claimed that he and the Moores bought ten dollars of marijuana from Crowder and left. *Id.* at 127. They went back to West's house briefly, but went to a hotel because she had been evicted. *Id.*

Little testified that he was bitten by a police dog and beaten by the police when he was arrested. *Id.* at 132. Little stated that Demery threatened him and pressured him to admit his involvement in the murder. *Id.* at 135-36. Little testified that Demery said he would not be charged if he made the admission. *Id.* at 137. Little

claimed that his trial testimony was truthful because there were many witnesses in the courtroom, and he no longer needed to be afraid of being threatened or "jumped on." *Id.* at 134.

Little argues that the State failed to prove that he committed the offense as opposed to someone else because of inconsistencies in the testimony of the State's witnesses and the fact that the State had initially charged Shawnee Bernard and Barnell Johnson with the murder.

7.   **Appellate Court Findings**

The appellate court found that the "gravity of the evidence" against Little was not "lessened by the fact that other possible offenders had been arrested early on for the murder." *Little*, 174 So.3d at 1228.

A review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are within the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Demery explained that while he had probable cause to arrest the other men initially, he did not find the evidence credible or conclusive. Demery's explanation could reasonably be accepted by the jury.

The appellate court found that Brown's inconsistent recollection of the events could have reasonably been rejected by the jury as unreliable considering that Brown had received a serious head injury in the shooting. *Little*, 174 So.3d at 1228.

As to the inconsistencies in the witnesses' accounts, the appellate court stated:

Despite Little's denial of any involvement in the crime, the jury clearly chose to credit the testimony of the other witnesses that refuted his claims. Little focuses his argument on minor inconsistencies in the various witnesses' accounts of events occurring before and after the murder. Regarding facts relating to what transpired after the three men entered the home, however, both Tracy and Kenneth knew very specific details about the offense that had not been released to the media. The medical testimony corroborated Tracy and Kenneth's accounts of how Little shot the victims. Before the incident Tracy saw Little with a 9mm pistol. This intimate knowledge of these details substantiated the brothers' credibility. Additionally, in coming forward, both brothers exposed themselves to criminal charges.

If believed, this evidence establishes that Little, accompanied by Tracy and Kenneth, went to buy marijuana from Crowder and Brown. While there, Little pulled out a gun and shot both victims.

*Little*, 174 So.3d at 1228.

Moreover, West also testified that Little confessed his actions to her. The appellate court found that the letters written between the two showed Little's attempts to get her sons to change their stories.

Little's conclusion that "the State decided a version of the story where [Little] was the shooter made more sense" is unsupported. Demery testified that he was not convinced that the initial suspects had committed the offense, and he kept

investigating. Johnson said Bernard did it; Bernard said Johnson did it. But neither Johnson nor Bernard testified at trial. On the other hand, Tracy, Kenneth, and Polly West all testified that Little committed the crime. And in one of his statements to police, Little admitted that he shot at Brown and intended to commit armed robbery. ECF No. 20-7 at 30. The jury heard Little's recorded statement. The jury's credibility determinations were reasonable.

The appellate court found the totality of the evidence sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Little was guilty of every essential element of second degree murder. "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). The evidence, viewed in the light most favorable to the prosecution, was sufficient support a conviction and precludes a finding that the state court adjudication was contrary to or involved in objectively unreasonable application of *Jackson*.

**D.** **Little fails to state a viable claim regarding the denial of his motion to suppress.**

Little claims that his inculpatory statement to Detective Demery was involuntary because it was induced by threats and promises. ECF No. 1-2 at 22. He claims that Demery said Little would not be charged if he made a statement. *Id.*

Little's habeas argument is premised on the admissibility of the statement under Louisiana law. A claim that the trial court improperly applied state law does

not constitute an independent basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (federal habeas corpus relief does not lie for errors of state law).

Little also cites *Miranda v. Arizona*, 384 U.S. 436 (1966), but admits that he was advised of the *Miranda* rights multiple times, and does not assert that he did not understand them. ECF No. 1-2 at 22-23.

As the appellate court noted:

At the hearing on the motion to suppress, Demery testified that he made no threats against or promises to Little regarding his statements. He emphatically denied that he told Little he would not be charged if he implicated himself. The recording corroborates the lack of such promises being made by Demery to Little. He reiterated this fact in his trial testimony.

Before denying Little's motion to suppress, the trial court noted its in camera inspection of all three statements made by Little. As its reasons for denying the motion, the court specifically quoted portions of one of the interviews in which Demery specifically told Little that he could not promise him anything.

Little concedes, and the audio recordings confirm, that he was advised of Miranda rights before being questioned at each of the three interrogations. Nevertheless, Little contends that although Demery told him in the second interview that he could not promise him anything, threats and promises "came before the second interview was recorded and when the tape was turned off in the middle of the interview."

*Little*, 174 So.3d at 1229.

Little fails to allege or establish the violation of a constitutional right through the admission of his inculpatory statements.

**E.    Little's claim regarding the validity of his indictment is meritless.**

Little claims that his rights under the Sixth and Fourteenth Amendments were violated because the court lacked jurisdiction to prosecute him without a valid

indictment. ECF No. 1-2 at 25. He claims that the indictment was invalid because it was not signed by the grand jury foreperson or other member of the grand jury.

The sufficiency of an indictment is not a matter for federal habeas relief unless it can be shown that the indictment was so defective that it deprived the state court of jurisdiction. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980). If the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue. *Weems v. Cain*, 157 F.3d 900 (5th Cir. 1998).

The trial court addressed Little's claim on post-conviction review, and the Second Circuit and Louisiana Supreme Court denied writs because Little failed to satisfy his burden of proof. ECF No. 20-8 at 154-56, 228, 321-22.

Moreover, as the trial court noted, the indictment "was endorsed a true bill and properly signed by the grand jury foreman on the back of the indictment form." ECF No. 20-8 at 154. Little's indictment is a part of the record and is clearly signed on the back. *Id.* at 150. Little's claim is meritless.

### F.    Little cannot make a free-standing actual innocence claim.

Little claims that he is factually innocent of second-degree murder because Johnson and Bernard were initially arrested and charged with the same crime; and Polly West presented inconsistent testimony. ECF No. 1-2 at 29-30. Although Little makes fleeting reference to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, his claim is based on *State v. Pierre*, (La. 10/15/13), 125 So.3d 403. *Pierre* suggests that a petitioner must satisfy the test of actual innocence established by the United State Supreme Court "as the gateway for considering in

federal habeas corpus review of final state court convictions claims of constitutional error otherwise procedurally barred by state law or by expiration of a statute of limitations." *Id.* at 409.

The United States Court of Appeals for the Fifth Circuit does not recognize a free-standing claim of actual innocence. *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (citing In re *Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009)). Instead, a credible showing of actual innocence may serve as a gateway to overcome procedurally defaulted or untimely federal habeas claims. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Little does not present any procedurally defaulted or untimely claim, so his stand-alone actual innocence claim is not cognizable on federal habeas review.[2]

### G.   Little fails to state a viable claim of ineffective assistance of counsel.

Little alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney failed to investigate the allegedly invalid indictment, failed to investigate impeachment evidence, and failed to file motions on Little's behalf. ECF No. 1-2 at 32. These claims were adjudicated by the state courts under *Strickland v. Washington*, 466 U.S. 668 (1984).

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the

---

[2] Even if Little did rely on actual innocence as a gateway for a barred claim, the claim would fail. Such a claim must be based on "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *House v. Bell*, 547 U.S.518, 537 (2006). Little presents no new evidence.

defendant that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. The first prong does not require perfect assistance by counsel; rather, a petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 688. The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

This Court's review of Little's ineffective assistance claim is "doubly deferential." *See Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)."). Essentially, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted). The habeas court does not determine whether counsel's actions were reasonable, but rather "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

Little claims that his attorney failed to properly investigate. In general, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Adekeye v. Davis*, 938 F.3d 678, 682–83 (5th Cir. 2019) (quoting *Strickland*, 466 U.S. at 691). A specific decision not to investigate must be assessed "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Id.* at 683 (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Little's claim that counsel failed to investigate the grand jury indictment because of the absence of a foreperson's signature is meritless. The record establishes that the indictment was signed. There was no defect and nothing for counsel to investigate. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585, n.6 (5th Cir. 1990); *see also Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Little's next argument is that counsel failed to investigate for impeachment evidence, rebuttal evidence, or evidence that he was not involved in the murder. To the extent Little believes counsel should have called additional witnesses, his claim fails.

"To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), *cert. denied*, 562 U.S. 911 (2010). Generally, "[a]n applicant 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Green*, 882 F.2d at 1003. Little alleges that an investigation would have "brought forth more information" regarding Brown's identification of Johnson and Bernard, reasons for Polly West's "self-serving" testimony, impeachment evidence from the grand jury, and "the importance of the arrest report" of Johnson and Bernard. ECF No. 1-2 at 38. Brown's photo identification (subsequently recanted) was addressed at trial and counsel cross-examined Demery on this issue. ECF No. 20-7 at 55-56. Additionally, West was challenged on her inconsistent statements and Little's attorney argued for the admission of the grand jury testimony. ECF No. 20-6 at 144-82. Little has neither alleged nor established what any further investigation would have yielded. He cannot show that but for the failure to investigate, he was prejudiced by the purported error.

Little also alleges that his trial attorney rendered ineffective assistance of counsel by failing to file pre-trial and post-trial motions. ECF No. 1-2 at 36-37. However, he does not assert what pre-trial motions should have been filed or what additional discovery would have revealed that had not already been provided by the

State in its discovery filings. Nor does Little show that the filing of other pretrial motions would have made any difference in the proceedings.

Little also complains that trial counsel did not file post-trial motions, including a motion for post-verdict judgment of acquittal, a motion for a new trial, a motion to deviate from the mandatory sentencing, or a motion to reconsider sentence. Little does not show that any of these motions had merit and would have been granted if filed by counsel. Prior to sentencing, the judge specifically noted that even if a motion for post-verdict judgment of acquittal had been filed, it would have been denied. ECF No. 20-7 at 202. The evidence was sufficient to support the verdict, so counsel's failure to file a motion for post-verdict judgment of acquittal is not ineffective. *Wiltz v. Louisiana*, 26 F.3d 1119, *5 (5th Cir. 1994).

Similarly, Little identifies no grounds for filing a motion for a new trial. Little identifies nothing that would have supported a deviation from the mandatory sentence of life imprisonment, and the judge noted that the facts did not warrant any such deviation even if such was constitutionally or legally permissible. *Id.* Finally, Little points to no basis for reconsideration of the mandatory sentence.

Little fails to show that the denial of his *Strickland* claims by the Louisiana Supreme Court was unreasonable under the deferential standard of 28 U.S.C. §2254(d). Because his allegations of ineffective assistance are meritless, there are no errors to consider cumulatively.

III.   **Conclusion**

Because Little is not entitled to habeas relief, IT IS RECOMMENDED that the Petition (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Thursday, January 20, 2022.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE